**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CONSOLIDATED RISK SERVICES, INC.,**

                              **Plaintiff**

                    **v.**                              **1:06-CV-871**
                                                        **(FJS/RFT)**

**AUTOMOBILE DEALERS WC SELF**
**INSURANCE TRUST; MICHAEL A. SMITH,**
**in his capacity as Chairman of the ADSIP Board**
**of Trustees; WAYNE JOHNSON, in his capacity**
**as Vice-Chairman of the ADSIP Board of Trustees;**
**WILLIAM LIA, JR., in his capacity as Secretary of**
**the ADSIP Board of Trustees; PAUL HEALEY, in**
**his capacity as Treasurer of the ADSIP Board of**
**Trustees; DWIGHT HEALEY, in his capacity as**
**Member of the ADSIP Board of Trustees; DENNIS**
**PETRISAK, in his capacity as Member of the**
**ADSIP Board of Trustees; CHARLES BASIL, in**
**his capacity as Member of the ADSIP Board of**
**Trustees; JOHN WORTS, in his capacity as**
**Member of the ADSIP Board of Trustees; and**
**RICHARD D'ANDREA, in his capacity as Member**
**of the ADSIP Board of Trustees,**

                              **Defendants.**
_____
_____

**AUTOMOBILE DEALERS WC SELF**
**INSURANCE TRUST; MICHAEL A. SMITH,**
**in his capacity as Chairman of the ADSIP Board**
**of Trustees; WAYNE JOHNSON, in his capacity**
**as Vice-Chairman of the ADSIP Board of Trustees;**
**WILLIAM LIA, JR., in his capacity as Secretary of**
**the ADSIP Board of Trustees; PAUL HEALEY, in**
**his capacity as Treasurer of the ADSIP Board of**
**Trustees; DWIGHT HEALEY, in his capacity as**
**Member of the ADSIP Board of Trustees; DENNIS**
**PETRISAK, in his capacity as Member of the**
**ADSIP Board of Trustees; CHARLES BASIL, in**
**his capacity as Member of the ADSIP Board of**
**Trustees; JOHN WORTS, in his capacity as**

**Member of the ADSIP Board of Trustees; and**
**RICHARD D'ANDREA, in his capacity as Member**
**of the ADSIP Board of Trustees,**

**Counterclaimants**

**v.**

**CONSOLIDATED RISK SERVICES, INC. and**
**CONSOLIDATED CLAIMS SERVICES, INC.,**

**Counterclaim Defendants.**

_____

**APPEARANCES**                          **OF COUNSEL**

**MENTER, RUDIN & TRIVELPIECE, P.C.**    **MITCHELL J. KATZ, ESQ.**
308 Maltbie Street
Suite 200
Syracuse, New York 13204-1498
Attorneys for Plaintiff and Counterclaim
Defendants

**RUPP, BAASE, PFALZGRAF,**             **JAMES M. GERLACH, ESQ.**
**CUNNINGHAM & COPPOLA LLC**           **DAVID R. PFALZGRAF, ESQ.**
1600 Liberty Building
424 Main Street
Buffalo, New York 14202-3616
Attorneys for Defendants and Counterclaimants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On December 30, 2005, Consolidated Risk Services, Inc. ("CRS") filed its Complaint in

the Eastern District of Pennsylvania, asserting a breach-of-contract claim against Defendants

arising from the parties' relationship in administering Defendants' worker's compensation

insurance trust.  On March 31, 2006, Defendants filed their Answer, joining Consolidated

Claims Services, Inc. ("CCS") and asserting seven counterclaims against both CRS and CCS for (1) breach of contract, (2) breach of fiduciary duty, (3) negligence, (4) unjust enrichment, (5) fraud in the inducement, (6) conversion, and (7) deceptive business practices.

Defendants filed a motion to transfer venue to the Northern District of New York on April 28, 2006. While that motion was pending, CRS and CCS filed a joint motion, in which CRS requested dismissal of the second through seventh counterclaims, and CCS requested dismissal of all counterclaims asserted against it. In the alternative, CRS and CCS requested a more specific pleading of the sixth counterclaim for conversion. On June 21, 2006, the Eastern District of Pennsylvania granted Defendants' motion to transfer venue to this Court.

## II. BACKGROUND[1]

Defendant and Counterclaimant Automobile Dealers WC Self Insurance Trust (together with the Board of Trustees referred to as "ADSIP") was created on November 13, 1995, under the New York Worker's Compensation laws to provide funding for the worker's compensation claims of the employees of participating car dealership employers. On November 13, 1995, ADSIP and CRS, a Pennsylvania corporation, entered into an Administrative Service Agreement ("Contract") by which CRS would administer ADSIP's worker's compensation program. At that

---

[1] On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must look solely to the face of the complaint and accept all well-pleaded factual allegations as true. *See Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citations omitted). Therefore, since Counterclaim Defendants seek to dismiss the counterclaims, the Court has drawn the facts from the Answer with Counterclaims. The Court has also relied upon the contractual provisions set forth in the Contract attached to the Complaint. *See* Complaint at Exhibit "A."

time, CRS advised ADSIP that it had the experience, skill, and expertise necessary to manage

claims and administer the trust.

Pursuant to the Contract, which CRS drafted, CRS was obligated to

(1) secure at least two competitive bids each year for Direct
Facultative Excess Insurance and a Surety Bond;

(2) provide risk management, loss control, and claims
administration services;

(3) establish and maintain reserve figures for each claim and
communicate these figures to the participating employer and/or the
Board of Trustees;

(4) complete and file all claims forms required by any applicable
laws or regulations necessary for proper claims administration;

(5) maintain claim file throughout the life of each claim;

(6) provide the Board of Trustees with a monthly claims report;

(7) file all appropriate claims with the excess insurance carrier and
comply with its claims reporting requirements;

(8) conduct quarterly site visits to discuss problem claims;

(9) arrange for an annual audit by a certified public accountant, a
review of the Fund's outstanding liabilities by an independent
actuary, and a claims audit by a qualified audit firm; and

(10) conduct or arrange for an annual payroll audit of each
employer to adjust their contribution rates to reflect their actual
funding level.

*See* Answer with Counterclaims at ¶ 25.  Since New York State Worker's Compensation Law governed the trust, it was also required to maintain assets in excess of its liabilities.  The Contract would automatically renew every five years unless the Board of Trustees provided ninety-days notice of cancellation for sufficient cause.[2]

In 2005, following completion of a Worker's Compensation Board regulatory review of the Trust for the period ending December 31, 2004, ADSIP learned that CRS was operating the Trust with liabilities exceeding assets.  During this period of time, ADSIP learned additional details about CRS' mismanagement and self-dealing.  Specifically, CRS retained outside vendors to perform claims administration functions without obtaining the ADSIP Trustees' approval.  The outside vendors' fees were billed to ADSIP in addition to the 14 % administrator's fee.  These outside vendors also overpaid claims, leading to increases in the size of the Trust and a corresponding increase in CRS' commissions.  CRS also depleted Trust assets by failing to file reimbursement claims pursuant to New York state law.

Moreover, CRS failed to obtain the required annual competitive bids for reinsurance and awarded the contract to the same company each year.  It also charged a commission that was 5 % greater than the industry standard for arranging reinsurance and failed to implement risk management and loss control programs because it had a financial incentive to maximize rather

---

[2] The Contract expressly limits the term "cause" to (1) the administrator's conviction for fraud, misappropriation of funds, or other criminal acts related to management of the trust; (2) the administrator's filing for Chapter 7 bankruptcy; (3) a government agency barring the administrator from serving as an administrator; and (4) termination of the Trust Fund in accordance with Contract provisions.  *See* Complaint at Exhibit "A," Administrative Service Agreement, at Article IV, Section 4.2.

than minimize the number of claims.[3]

As a result of CRS' actions, in 2005, ADSIP retained Lawley Service, Inc. to review pending claims.  Additionally, ADSIP retained Robert Snashall of Snashall & Associates to repair its credibility with the Worker's Compensation Board.  Moreover, the Worker's Compensation Board required ADSIP to hire independent auditors at a cost of more than $70,000.  Therefore, the ADSIP Trustees voted not to renew the Contract in November 2005, less than ninety days before the end of the Contract's term on December 31, 2005.  In December 2005, ADSIP retained a new administrator, FCS Administrators, Inc., to begin on January 1, 2006.

---

[3] ADSIP also includes Counterclaim Defendant Consolidated Claims Services, Inc. ("CCS") in these allegations.  CCS, a New York corporation conducting business in Dewitt, New York, was the third-party claims administrator that performed the day-to-day claims handling for CRS and the Trust.  ADSIP asserts that CRS and CCS are affiliated entities and that they share officers, employees, offices, and business activities.

### III. DISCUSSION[4]

**A.    CRS' and CCS' argument that ADSIP's tort counterclaims are duplicative of its breach-of-contract counterclaim**

CRS and CCS assert that ADSIP's tort counterclaims for breach of fiduciary duty, negligence, fraudulent inducement, and conversion are precluded under both New York and Pennsylvania law as duplicative of its breach-of-contract counterclaim.

Under New York law, a tort cause of action generally does not lie where it is duplicative of a claim sounding in contract. *See Maxus Leasing Group, Inc. v. Kobelco Am., Inc.*, No. 5:04-CV-518, 2007 WL 655779, *4 (N.D.N.Y. Feb. 26, 2007) (citation and footnote omitted). However, an actionable tort may exist when the plaintiff asserts that the defendant breached a duty independent of the contract. *See id.* (citation and footnote omitted). The duty can be considered independent of the contract even if it arises out of the relationship that the contract created. *See LaBarte v. Seneca Res. Corp.*, 285 A.D.2d 974, 976 (4th Dep't 2001) (citations omitted). "'This legal duty must spring from circumstances extraneous to, and not constituting

---

[4] Choice of law is a threshold issue in this diversity case. However, the parties did not fully brief this issue. CRS and CCS merely footnote the issue, stating that, at a later time, they may argue that Pennsylvania law is applicable. However, they argue that the Court should dismiss the counterclaims under either New York or Pennsylvania law. Similarly, ADSIP footnotes the issue, stating that it is confident that New York law applies due to the state's "significant contacts and relationship with the particular issues [that] predominate in this case, and [because] its governmental interests would be impaired by application of Pennsylvania law." *See* ADSIP's Memorandum of Law at 4 n.1. Without further argument on the issue, ADSIP also applies both Pennsylvania and New York law.

Although the Court will eventually be required to determine if a conflict of law exists and to determine which state's law applies, the Court need not do so at this preliminary stage. As elaborated below, in deciding this motion to dismiss, the Court reaches the same result under both New York and Pennsylvania law.

elements of, the contract, although it may be connected with and dependent upon the contract.'"[5] *Id.* at 976-77 (quotation omitted).  Therefore, in a case where the plaintiff sufficiently pleads a duty beyond the scope of a contract, he can also maintain other tort claims.  *Cf. Sergeants Benevolent Assoc. Annuity Fund v. Renck*, 19 A.D.3d 107, 111 (1st Dep't 2005) ("Since we have concluded, however, that a claim for breach of fiduciary duty has been sufficiently pleaded, a duty on the part of the [defendants] beyond the scope of the agreement has been alleged and the negligence claim should be reinstated.").

Similarly, under Pennsylvania law, tort claims are precluded if the "gist of the action" sounds in contract rather than tort.  *See Berger & Montague, P.C. v. Scott & Scott, LLC*, 153 F. Supp. 2d 750, 753 (E.D. Pa. 2001) (citations omitted).  A tort claim is maintainable if it alleges conduct that is "'primarily tortious,'" and a contract is merely collateral.  *See Little Souls Inc. v. State Auto Mut. Ins. Co.*, No. Civ.A. 03-5722, 2004 WL 503538, *2 (E.D. Pa. Mar. 15, 2004) (citation omitted).  In applying the gist of the action doctrine, the court should bear in mind that contractual duties are mutually agreed to, whereas torts involve violations of duties imposed as a result of social policy.[6]  *See id.* (quotation and footnote omitted).  However, considering the

---

[5] *LaBarte* concerned breach-of-contract claims and causes of action for breach of fiduciary duties and accounting.  *See* 285 A.D.2d at 976.  The court held that, although it was unclear at the motion to dismiss stage whether the plaintiffs could ultimately establish a breach of fiduciary duty "separate and distinct from their contractual relationship," they had stated cognizable causes of action to survive the motion to dismiss.  *See id.* (citation omitted).

[6] The gist of the action doctrine bars tort claims "(1) arising solely from a contract between the parties, (2) where the duties allegedly breached were created and grounded in the contract itself, (3) where the liability stems from a contract, or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."  *Interwave Tech. Inc. v. Rockwell Automation, Inc.*, No. Civ.A. 05-398, 2005 WL 3605272, *12 (E.D. Pa. Dec. 30, 2005) (citing [*EToll, Inc. v. Elias/Savion Adver., Inc.*,

(continued...)

-8-

permissive pleading requirements of Rule 8(e)(2) of the Federal Rules of Civil Procedure,

Pennsylvania state and federal courts have refused to apply the gist of the action doctrine to

preclude tort claims at the motion to dismiss stage.[7]  *See, e.g., Interwave Tech. Inc.*, 2005 WL

3605272, at *13; *Berger & Montague, P.C.*, 153 F. Supp. 2d at 754; *Lebish v. Whitehall Manor

Inc.*, No. 2001-C-2226, 2002 WL 31730745, *250-*51 (Pa. Ct. of Common Pleas June 12,

2002).  Thus, judicial caution is necessary at the motion-to-dismiss stage because courts often

cannot determine whether the gist of the action is in contract or tort without the assistance of

further evidence from discovery.  *See Interwave Tech. Inc.*, 2005 WL 3605272, at *13 (quotation

omitted).

In this case, ADSIP pleads the existence of an extra-contractual duty by alleging that it

placed a special confidence in CRS to administer the Trust based on representations that CRS

had expertise in the field and the fact that CRS had unfettered day-to-day authority to act on

behalf of the Trust.  *See* Answer with Counterclaims at ¶¶ 74-79.  These allegations support

---

[6](...continued)
811 A.2d 10,] 119 [(Pa. Super. Ct. 2002)]).

[7] Rule 8(e)(2) states, in pertinent part, that

> [a] party may set forth two or more statements of a claim or
> defense alternately or hypothetically, either in one count or defense
> or in separate counts or defenses.  When two or more statements
> are made in the alternative and one of them if made independently
> would be sufficient, the pleading is not made insufficient by the
> insufficiency of one or more of the alternative statements.  A party
> may also state as many separate claims or defenses as the party has
> regardless of consistency and whether based on legal, equitable, or
> maritime grounds . . . .

*See* Fed. R. Civ. P. 8(e)(2).

ADSIP's contention that CRS breached fiduciary and other common law duties arising out of the relationship that the contract created but independent of the contract itself. *See* ADSIP's Memorandum of Law at 10 (citing *LaBarte*, 285 A.D.2d at 976-77). Therefore, the Court finds that ADSIP's tort counterclaims against CRS are sufficient to survive a motion to dismiss under New York law. Furthermore, the Court reaches the same conclusion and exercises judicial caution under Pennsylvania law because ADSIP has pled the existence of both contractual and non-contractual duties.

Finally, because the Court finds that ADSIP has not adequately alleged that it had a contractual relationship with CCS to support a breach-of-contract counterclaim against CCS, *see infra*, ADSIP's tort counterclaims against CCS are not duplicative.

Accordingly, the Court denies CRS' and CCS' motion to dismiss ADSIP's tort counterclaims.[8]

## B.   CRS' and CCS' alternative request for a more specific pleading of ADSIP's conversion counterclaim

CRS and CCS contend that ADSIP's conversion claim fails to meet the specificity

---

[8] CRS and CCS also assert that the economic loss doctrine precludes ADSIP's tort claims. The economic loss doctrine operates similarly to the gist of the action doctrine and prohibits a plaintiff "'from recovering in tort economic losses to which their entitlement ***flows only from a contract***,' thereby circumventing the bar on collecting punitive damages for breach of contract." *Berger & Montague, P.C.*, 153 F. Supp. 2d at 753 (quotation and other citation omitted) (emphasis added). This doctrine developed in the context of product liability cases and does not squarely apply in this context. *See Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 n.11 (3d Cir. 2001) (citations omitted); *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 288 n.1 (2001) (citation omitted). Accordingly, the Court finds that the economic loss doctrine does not preclude ADSIP's tort counterclaims.

requirement of Rule 9(b) of the Federal Rules of Civil Procedure. Therefore, they request either that the Court dismiss the conversion counterclaim or require ADSIP to amend its complaint to provide more details. In response, ADSIP argues that Rule 9(b) applies to fraud actions and does not require particularity in pleading conversion claims.

A plaintiff is not required to plead a conversion claim with particularity under Rule 9(b). *See Parra v. Greenpoint Mortgage Co.*, No. Civ.A. 01-CV-02010, 2002 WL 32442231, *3 (E.D.N.Y. Mar. 26, 2002) (citing [*Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993)]).

Under New York law, "[c]onversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Vigilant Ins. Co. of Am. v. Housing Auth.*, 87 N.Y.2d 36, 44 (1995) (quotation and other citation omitted). Similarly, under Pennsylvania law, conversion "is the deprivation of another's right of property, or use or possession of a chattel, or other interference therewith without the owner's consent and without legal justification." *Prudential Ins. Co. of Am. v. Stella*, 994 F. Supp. 318, 323 (E.D. Pa. 1998) (citations omitted).

Here, ADSIP alleges that CRS and CCS "willfully took funds from the Trust, without authority or justification, thereby depriving ADSIP of possession of those funds." *See* Answer with Counterclaims at ¶ 97. Since particularity is not required, these allegations sufficiently plead the elements of conversion under both New York and Pennsylvania law. Accordingly, the Court denies CRS' and CCS' alternative motion to dismiss or require a more specific pleading of ADSIP's conversion counterclaim.

**C.      CRS' and CCS' argument that ADSIP's breach-of-contract counterclaim against CCS is precluded because there is no privity of contract**

CRS and CCS contend that, under both New York and Pennsylvania law, ADSIP's breach-of-contract counterclaim against CCS is precluded because there is no privity of contract. In response, ADSIP argues that its breach-of-contract counterclaim should survive the motion to dismiss because the following facts are unclear: (1) whether CCS is a subsidiary, affiliate, or alter-ego of CRS; (2) whether ADSIP was a third-party beneficiary of an agreement between CCS and CRS; and (3) whether CRS entered into a contract with CCS as ADSIP's agent.

**1.  ADSIP's alter-ego argument**

Under both New York and Pennsylvania law, a breach-of-contract claim generally requires privity. *See Penn City Invs., Inc. v. Soltech, Inc.*, No. Civ.A. 01-5542, 2003 WL 22844210, *3 (E.D. Pa. Nov. 25, 2003) (quotation omitted); *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997) (quotation and other citation omitted).  However, both states allow alter-ego liability in certain circumstances.  In New York, courts can impose alter-ego liability by disregarding formal corporate identities only when necessary to prevent fraud or to achieve equity.  *See @Wireless Enters., Inc. v. AI Consulting, LLC*, No. 05-CV-6176, 2006 WL 3370696, *6 (W.D.N.Y. Oct. 30, 2006).  Courts pierce the corporate veil and find two corporations to be a single unit ""where one is so related to, or organized, or controlled by, the other as to be its instrumentality or alter ego.""  *Rivera v. Citgo Petroleum Corp.*, 181 A.D.2d 818, 819 (2d Dep't 1992) (quotation omitted).

In Pennsylvania, a plaintiff must make a "very high showing of domination and control"

to succeed in establishing alter-ego liability because courts should recognize the corporate entity "'unless specific, unusual circumstances call for an exception.'" *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 580 (E.D. Pa. 1994) (quotation omitted). To recover on an alter-ego theory, the plaintiff must show "'that the controlling corporation wholly ignored the separate status of the controlled corporation and so dominated and controlled its affairs that its separate existence was a mere sham.'" *Id.* (quotation omitted). Alternatively, the plaintiff must show that the controlled corporation acted like a robot or puppet in response to the controller's commands. *See id.* (quotation omitted). Factors supporting alter-ego liability include (1) insufficient capitalization, (2) intermingling of funds, (3) no functioning independent officers and directors, (4) failure to observe corporate formalities, (5) failure to pay dividends, and (6) the fact that the controlled corporation is a mere facade. *See id.* (citations omitted).

Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard is low, a pleading must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *See Adani Exps. Ltd. v. AMCI (Exp.) Corp.*, No. 2:05-CV-00304, 2006 WL 2924783, *2 (W.D. Pa. Oct. 10, 2006) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (other citation omitted). Although alter-ego claims must only meet the minimal notice standard of Rule 8(a), courts have found that purely conclusory allegations of alter-ego status will not survive a motion to dismiss. *See, e.g., @Wireless Enters., Inc.*, 2006 WL 3370696, at *6 (citations omitted); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) ("Plaintiffs have failed to allege any facts to support their conclusion that the bank holding companies exercised such dominion and control

-13-

over its subsidiaries.  The unadorned invocation of dominion and control is simply not enough. For example, there is no allegation as to how or why the holding companies have dominion and control over the subsidiaries." (citations omitted)).

In its Answer with Counterclaims, ADSIP asserts only the following facts concerning CCS' relationship to CRS: (1) CCS is a New York corporation, with its principal place of business in Dewitt, New York; (2) CCS was the third-party claims administrator for the Trust and performed most or all of the Trust's daily claims handling; (3) CRS and CCS are affiliated entities sharing officers and employees, offices and other facilities, and business activities and functions; and (4) the counterclaims are asserted against both CRS and CCS and their liability is joint, joint and several, or in the alternative.  *See* Answer with Counterclaims at ¶¶ 14-15, 19-20. However, ADSIP's Answer with Counterclaims contains no averments that it has privity with CCS or that would provide notice to CRS and CCS that it is seeking alter-ego liability.  ADSIP does not allege that CRS controls or dominates CCS or that CCS was CRS' instrumentality or alter-ego.  Moreover, ADSIP does not allege that alter-ego liability is necessary to avoid fraud, achieve equity, or any other reason.  In fact, ADSIP did not make even conclusory allegations of alter-ego liability until it submitted its Memorandum of Law in opposition to the motion to dismiss.  Therefore, the Court finds that ADSIP has not provided fair notice of an alter-ego claim against CCS.

### 2.  ADSIP's third-party beneficiary argument

In both New York and Pennsylvania, a party's status as a third-party beneficiary is sometimes sufficient to enable a breach-of-contract claim.  *See, e.g. Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 433, 434-35 (2000); *Tremco, Inc. v. Pa. Mfrs. Ass'n Ins. Co.*, 832 A.2d 1120, 1122 (Pa. Super. Ct. 2003).  In New York, a purported third-party beneficiary must establish the following: (1) the existence of a valid contract between other parties; (2) that the contract was intended for the third-party's benefit; and (3) that the benefit is sufficiently immediate, rather than incidental, to indicate that the contracting parties assumed a duty to compensate the third-party if the benefit is lost.  *See Cal. Pub. Employees' Ret. Sys.*, 95 N.Y.2d at 434-35 (quotation and other citation omitted).  In Pennsylvania, the third-party must establish that "'both parties to the contract had an intent to benefit the third party through the contract and did, in fact, explicitly indicate this intent in the contract.'"  *Tremco, Inc.*, 832 A.2d at 1122 (quotation omitted).

As stated above, ADSIP's averments regarding the relationship between CRS and CCS are very limited.  Like its alter-ego argument, ADSIP mentions third-party beneficiary status for the first time in its Memorandum of Law in opposition to the motion to dismiss.  Most significantly, the Court notes that the Answer with Counterclaims does not allege that a contract existed between CRS and CCS.  Moreover, ADSIP does not allege that any such contract was intended for its benefit or that the contract explicitly indicated this intent.  Therefore, the Court finds that ADSIP has not provided fair notice of a third-party beneficiary claim against CCS.

### 3.  *ADSIP's agency argument*

As a general matter of both New York and Pennsylvania law, with exceptions, a principal

-15-

may sue to enforce contracts made by its agents, whether the principal was disclosed or undisclosed.  *See* 4A Celia Goldwag Berenholz, N.Y. Practice Series § 69:40 (Robert L. Haig ed.) (2d ed. 2006) (footnotes omitted); 3 Anne Knickerbocker, Standard Pennsylvania Practice 2d § 14:40 (2006) (footnotes omitted).

The Court again notes ADSIP's minimal averments concerning CCS.  Although ADSIP alleges that CCS was the day-to-day claims processor, the Answer with Counterclaims does not allege that CRS and CCS had a contract or that CRS pursued the contract as ADSIP's agent. Moreover, there is no allegation that CCS breached such a contract: the only breach-of-contract allegations concern the contract between ADSIP and CRS for administration of the Trust.  As with ADSIP's alter-ego and third-party beneficiary arguments, ADSIP mentions agency for the first time in its Memorandum of Law in opposition to the motion to dismiss.  Therefore, the Court finds that ADSIP has not provided fair notice of an agency claim against CCS.

Accordingly, for the above-stated reasons, the Court grants CRS' and CCS' motion to dismiss ADSIP's breach-of-contract counterclaim against CCS because ADSIP has not sufficiently alleged privity of contract with CCS, alter-ego liability, third-party beneficiary status, or liability through agency principles.

**D.     CRS' and CCS' argument that ADSIP's unjust enrichment claim is precluded because a contract exists between ADSIP and CRS.**

-16-

CRS and CCS argue that, because a contract governs the relationship between the parties, ADSIP's unjust enrichment claim is precluded.  In response, ADSIP asserts that it should be allowed to plead this cause of action in the alternative pursuant to Rule 8(e)(2) of the Federal Rules of Civil Procedure.

Under New York law, an enforceable contract between the parties concerning a particular subject matter precludes quasi-contractual recovery in unjust enrichment for claims arising out of that subject matter.  *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (citations omitted).  Similarly, under Pennsylvania law, unjust enrichment is not available when the parties' relationship is based on an express contract or written agreement.  *See U.S. Small Bus. Admin. v. Progress Bank*, No. Civ.A. 03-3461, 2004 WL 2980412, *12 (E.D. Pa. Dec. 22, 2004) (quotation and other citation omitted).

However, Rule 8(a) of the Federal Rules of Civil Procedure allows plaintiffs to plead alternative claims.  Courts have denied motions to dismiss unjust enrichment claims as premature for this reason.  *See id.*; *Benigno v. Flatley*, No. Civ. A. 01-CV-2158, 2001 WL 1132211, *1 (E.D. Pa. Sept. 13, 2001) (citation omitted).  Furthermore, courts should not dismiss an unjust enrichment claim when there is a dispute about whether the contract covers the particular controversy.  *See Envirocon, Inc. v. Alcoa, Inc.*, No. 7:06-cv-0549, 2006 WL 2460640, *2 (N.D.N.Y. Aug. 23, 2006) (quotation and other citation omitted).

In this case, ADSIP concedes that a contract exists between it and CRS concerning trust administration.  Ordinarily, the existence of this contract would preclude recovery against CRS under an unjust enrichment theory.  However, ADSIP also asserts that CRS has breached extra-contractual duties so it is unclear at this time whether the contract covers all disputes between

-17-

the parties.  Therefore, since Rule 8(a) allows a party to plead alternative claims, the Court finds that it is premature to dismiss the unjust enrichment counterclaim against CRS at this time.

Moreover, as noted above, ADSIP does not allege that a contract existed between it and CCS, and the Court has granted CRS' and CCS' motion to dismiss ADSIP's breach-of-contract counterclaim against CCS.  Therefore, ADSIP's unjust enrichment counterclaim against CCS cannot be precluded as duplicative.

Accordingly, the Court denies CRS' and CCS' motion to dismiss ADSIP's unjust enrichment counterclaim.

**E.      CRS' and CCS' argument that the Court should dismiss ADSIP's deceptive business practices claim under N.Y. Gen. Bus. Law § 349 because no cognizable public interest has been harmed**

CRS and CCS contend that the Court should dismiss ADSIP's deceptive business practices claim because the dispute is a private contract dispute and a cognizable public interest has not been harmed.  In response, ADSIP argues that this cause of action is not strictly limited to any particular type of consumer injury and that courts have upheld similar claims in the insurance context.

Section 349 of the New York General Business Law makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."  N.Y. Gen. Bus. Law § 349(a) (McKinney 2004).  To state a claim under this statute, the plaintiff must allege that the act (1) was consumer-oriented, (2) was misleading in a material respect, and (3) caused injury.  *See Excellus Health Plan, Inc. v.*

-18-

*Tran*, 287 F. Supp. 2d 167, 179 (W.D.N.Y. 2003) (citations omitted).  With respect to the first requirement, courts have allowed the suit to proceed "'so long as some harm to the public at large is at issue.'" *Id.* at 180 (quotation omitted) (stating that the central issue is whether the practice affects the public interest not whether the suit was brought by a consumer or a competitor).  In the insurance industry, this cause of action has been used against an insurer's claim-settlement practices and policies designed to deceive policyholders in violation of New York Insurance Law.  *See Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F. Supp. 732, 738-39 (S.D.N.Y. 1990).

In this case, ADSIP alleges that CRS/CCS engaged in deceptive practices by representing to the general public that it was skilled in claims administration through marketing materials meant to influence ADSIP members and other consumers in the self-insurance industry.  ADSIP also alleges that these representations are false because four out of the five trusts that CRS and CCS administer are under-funded and possibly in the process of having the New York Worker's Compensation Board dissolve them.  The state of these under-funded trusts allegedly affects both employers and employees – in other words, the public at large.  Moreover, ADSIP alleges that the deceptive business practices have led the Worker's Compensation Board to enact more stringent regulations.  Finally, ADSIP asserts that these practices damaged numerous similarly-situated trusts, consumers, and the entire self-insurance industry.  *See* Answer with Counterclaims at ¶¶104-109.

Accepting these allegations as true, the Court infers that the alleged business practices affected the public interest because ADSIP asserts harm to numerous self-insurance trusts, and these trusts represent dozens of employers.  In turn, these employers employ potentially

thousands of workers who rely on the trusts for worker's compensation insurance.  Accordingly, the Court denies CRS' and CCS' motion to dismiss ADSIP's deceptive business practices counterclaim.

## IV. CONCLUSION

Accordingly, after reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that CRS' and CCS' motion to dismiss ADSIP's tort counterclaims, unjust enrichment counterclaim, and deceptive business practices counterclaim is **DENIED**; and the Court further

**ORDERS** that CRS' and CCS' alternative motion to dismiss or require a more specific pleading of ADSIP's conversion counterclaim is **DENIED**; and the Court further

**ORDERS** that CRS' and CCS' motion to dismiss ADSIP's breach-of-contract counterclaim against CCS is **GRANTED**; and the Court further

**ORDERS** that this case is referred to Magistrate Judge Treece for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: March 27, 2007
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

-20-