**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CONSOLIDATED RISK SERVICES, INC.,**

                                        **Plaintiff,**

                    **v.**                                          **1:06-CV-871**
                                                                     **(FJS/RFT)**

**AUTOMOBILE DEALERS WC SELF INSURANCE**
**TRUST; MICHAEL A. SMITH, in his capacity as**
**Chairman of the ADSIP Board of Trustees; WAYNE**
**JOHNSON, in his capacity as Vice Chairman of the**
**ADSIP Board of Trustees; WILLIAM LIA, JR., in his**
**capacity as Secretary of the ADSIP Board of Trustees;**
**PAUL HEALEY, in his capacity as Treasurer of the**
**ADSIP Board of Trustees; DWIGHT HEALEY, in his**
**capacity as Member of the ADSIP Board of Trustees;**
**DENNIS PETRISAK, in his capacity as Member of the**
**ADSIP Board of Trustees; CHARLES BASIL, in his**
**capacity as Member of the ADSIP Board of Trustees;**
**JOHN WORTS, in his capacity as Member of the ADSIP**
**Board of Trustees; and RICHARD D'ANDREA, in his**
**capacity as Member of the ADSIP Board of Trustees;**

                                        **Defendants.**
_____

**APPEARANCES**                            **OF COUNSEL**

**MENTER, RUDIN & TRIVELPIECE, LLC**       **MITCHELL J. KATZ, ESQ.**
308 Maltbie Street, Suite 200               **ROBERT G. BENNETT, ESQ.**
Syracuse, New York 13204-7451
Attorneys for Plaintiff

**GROSS, SHUMAN, BRIZDLE, &**              **RICHARD S. ATWATER, ESQ.**
**GILFILLAN, P.C.**
465 Main Street, Suite 600
Buffalo, New York 14203
Attorneys for Defendants

**RUPP, BAASE, PFALZGRAF,**            **DAVID R. PFALZGRAF, ESQ.**
**CUNNINGHAM & COPPOLA, LLC**
1600 Liberty Building
Buffalo, New York 14202-3616
Attorneys for Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On December 30, 2005, Plaintiff, an insurance trust administrator, filed this breach-of-contract action in the Eastern District of Pennsylvania, alleging that Defendant, a self-insured trust, terminated it without cause.[1]  On June 21, 2006, the District Court for the Eastern District of Pennsylvania transferred the action to this Court.[2]  On July 17, 2006, Defendant submitted its answer with counterclaims, alleging that Plaintiff breached the Administrative Services Agreement (the "Contract") prior to Defendant's alleged breach.[3]

---

[1] For purposes of this Memorandum-Decision and Order, the Court will refer to all of the listed Defendants-Counterclaim Plaintiffs as "Defendant" and to Plaintiff-Counterclaim Defendant as "Plaintiff."  Although Plaintiff names several Defendants in its complaint, Defendants are the Trust itself and the members of the Trust's Board of Trustees, acting in their roles as Trustees.

[2] The Eastern District of Pennsylvania decided that the convenience of the parties and witnesses and New York's interest in the case weighed in favor of transferring venue to the Northern District of New York.

[3] On June 25, 2007, Defendant filed an amended answer with amended counterclaims.

## II. BACKGROUND[4]

On November 13, 1995, Plaintiff and Defendant created Defendant Trust ("Trust Agreement"), under the New York Worker's Compensation laws, to provide funding for the worker's compensation claims of the employees of participating car dealerships.  On that same day, Defendant and Plaintiff, in addition to creating the Trust, entered into the Contract, which designated Plaintiff as the trust administrator for a five-year period.  The Contract renewed automatically for additional five-year periods, at Plaintiff's discretion, unless Defendant earlier terminated the Contract.  *See* Declaration of R. Scott Atwater dated October 14, 2008 ("Atwater Decl."), at ¶ 17 and Exhibit "G," at § 4.1, annexed thereto.

The Contract provided the Board of Trustees with the power to delegate all, or a portion, of its operational responsibilities to an administrator, which Defendant did when it appointed Plaintiff as trust administrator.  The authority and duties that Defendant delegated to Plaintiff included, among others, (1) the duty to file any information necessary to maintain the group's self-insurance privileges in a timely manner; (2) the absolute authority to approve new members who met the established underwriting criteria and the duty to recommend to Defendant prospective members who did not meet the criteria; (3) the duty to assess whether an injured person was covered under the Trust and the amount of payment owed; (4) the duty to make payments to injured persons from a budget that Defendant approved; and (5) the duty to complete and file all claim forms required by law that were necessary for the proper administration of the claims incurred.  *See id.* at Exhibit "G," at §§ 3.1, 3.4, 3.6, 3.8, 3.9.

---

[4] Unless otherwise indicated, the facts are either undisputed or are those that Plaintiff asserted.

On May 6, 2005, a Workers' Compensation Board Level I Review of the Trust for the

2004 fiscal year determined that the Trust had a $13 million deficit; and, by the end of 2005, the

deficit exceeded $22 million.  *See id.* at ¶ 64.  In response to the growing trust deficit, in

November of 2005, Defendant terminated Plaintiff as trust administrator, which triggered this

litigation.  *See id.* at ¶¶ 67, 71.[5]

Currently before the Court is Defendant's motion for partial summary judgment on its

first counterclaim for breach of contract and to amend its third-party complaint to include AVI

Risk Services, LLC as a Counterclaim-Defendant.  Plaintiff asserts a statute-of-limitations

affirmative defense, alleging that Defendant's counterclaim for alleged breaches of contract prior

to March 31, 2003 are barred by the three-year malpractice statute of limitations found at section

214(6) of the New York Civil Practice Law and Rules.

---

[5] The Contract provided that Defendant could terminate Plaintiff for cause, as defined therein, and upon providing Plaintiff with ninety-days notice of its intent to terminate.  *See* Atwater Decl. at Exhibit "G," at §§ 4.1-4.2.  Under the terms of the Contract, "cause" for termination exists if the

1.  Administrator is convicted by a court of competent jurisdiction of fraud, misappropriation of trust funds or other criminal acts directly related to its management of the program.

2.  Administrator files for chapter 7 bankruptcy proceedings.

3.  Administrator is barred from serving in its capacity as Administrator by the New York Workers Compensation Board, Insurance Department or other appropriate governmental agency.

4.  The Trust Fund is terminated in accordance with the terms and provisions of the Trust Agreement.

*See id.* at Exhibit "G," at § 4.2.

## III. DISCUSSION

**A.     Statute of limitations**

As stated, in response to Defendant's motion for summary judgment on its first counterclaim, Plaintiff asserts that, because it provides "professional" services, as the New York Court of Appeals has defined that term, the three-year statute of limitations for malpractice actions applies and not the six-year statute controlling contract actions.  *See* Plaintiff's Memorandum of Law at 19-20.  Therefore, Plaintiff contends that, to the extent that Defendant's breach-of-contract counterclaim is based on breaches that occurred prior to March 31, 2003, it is barred by the three-year statute of limitations.

It is well settled that, in New York, a "malpractice" action may, in theory, be grounded not only in negligence but in contract as well.  *See Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 25 (2001) (citation omitted).  In New York, breach-of-contract actions are subject to a six-year statute of limitations while malpractice actions against nonmedical "professionals" are subject to a three-year limitations period, whether the claim is based on tort or contract.  *See id.* (citing N.Y. C.P.L.R. § 214(6)).  Accordingly, when a plaintiff brings a cause of action that sounds both in contract and negligence, the appropriate statute of limitations depends on whether the actor is a "professional," who was acting in that capacity.  *See id.* at 28.

In *Chase Scientific*, the plaintiff brought suit against the defendants – insurance brokers – asserting one cause of action for negligence and one for breach of contract based on the defendants' failure to secure adequate coverage to indemnify the plaintiff against losses to its inventory.  *See id.* at 24.  The defendants moved to dismiss the entire action as time-barred under CPLR 214(6), contending that the claim was one for malpractice and that the three-year statute of

limitation period had already run.  *See id.*  Finding for the defendants, the New York Court of

Appeals held that insurance agents and brokers were not "professionals;" and, therefore, they

were not within the ambit of CPLR 214(6).  *See id* at 30.  In so holding, the court noted that the

statute's legislative history referred specifically to "'an architect, engineer, lawyer or accountant'"

in speaking of professional malpractice and that the qualities shared by those in these professions

provided guidance in defining the term "professional."  *Id.* at 29 (quotation omitted).  Such

qualities include formal education and training, regulations setting forth qualifications to

practice, licensure, a code of conduct beyond that which is commonly accepted in the

marketplace and a disciplinary code for violations of the code of conduct.  *See id.* (citations

omitted).  Additionally, the court found that "a professional relationship is one of trust and

confidence, carrying with it a duty to counsel and advise clients[.]"  *Id.* (citations omitted).

Applying those criteria to insurance agents and brokers, the court found that, although

agents and brokers must be licensed, they are not required to engage in extensive formalized

education and they are not bound by a standard of conduct for which discipline might be

imposed, unlike the other learned professions.  *See id.* at 30.  Finally, the court concluded that,

although an insurance agent has a common law duty to obtain the requested coverage, the agent

does not generally have a continuing duty to advise or guide a client based on a special

relationship of trust and confidence.  *See id.*; *see also* N.Y. Ins. Law §§ 2103, 2104; N.Y. Comp.

Codes R. & Regs. tit. 12, § 302-1.3.

Plaintiff asserts that *Chase Scientific* is distinguishable because Workers' Compensation

Hearing Representatives are held to a code of conduct, which insurance agents and brokers are

not.  Specifically, Plaintiff argues that they must follow the code of conduct and take an oath and

that the code of conduct contains formalized procedures for the revocation of a representative's license.  These conditions, however, appear to be no more rigorous than those imposed on insurance agents and brokers.  *See* N.Y. Comp. Codes R. & Regs. tit. 11, §§ 31.1– 31.2.

Based on the information provided, it is clear that the three-year malpractice statute of limitations does not apply to Workers' Compensation Hearing Representatives.  These hearing representatives require the same level of education as insurance agents and brokers, and they have similar disciplinary codes and proceedings and; accordingly, *Chase Scientific*, 96 N.Y.2d at 25, is controlling.  *See id.* at 30 (holding that, "[t]o be sure, insurance agents and brokers are held to high standards of education and qualification (*see, e.g.*, Insurance Law §§ 2103, 2104), but these criteria are simply not as rigorous as those embraced by what we conclude are the professionals within CPLR 214(6)").  Therefore, the Court concludes that the six-year statute of limitations governing contract actions applies; and, thus, Defendant's breach-of-contract counterclaim is not time-barred.

### B.    Summary judgment standard[6]

Summary judgment is appropriate if the pleadings, affidavits, and disclosures that form the record establish that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A court should deny summary judgment "if the evidence is such that a reasonable jury could return a verdict" in favor of the

---

[6] The Trust Agreement contains a choice-of-law provision designating New York law as the governing law.  *See* Atwater Decl. at Exhibit "F," at § 9.6.  Since New York has a reasonable relationship to the Trust Agreement, and neither party argues that any other state's law should apply, the Court will apply New York law to decide this dispute.  *See Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 51 (2d Cir. 2004) (citations omitted).

non-moving party. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 178 (2d Cir. 2008) (citation omitted).  In deciding a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *See In re "Agent Orange" Prod. Liab. Litig.* 517 F.3d 76, 87 (2d Cir. 2008) (quotation omitted).

**C.     Defendant's breach-of-contract counterclaim**

As noted, Defendant has moved for summary judgment with respect to its first counterclaim for breach of contract.  Specifically, Defendant alleges that Plaintiff materially breached the Contract by (1) failing to file required forms with the New York Workers' Compensation Board's Second Injury Fund, which cost the Trust millions of dollars; (2) taking commissions for the placement of reinsurance coverage greatly in excess of the contractual limitation of industry standard commissions; (3) impermissibly charging the Trust for payments to subcontractors that Plaintiff hired to perform its contractual obligations; and (4) failing to administer the Trust in accordance with industry standards.

*1. The first basis on which Defendant claims breach of contract: Plaintiff failed to file forms required by New York State's Workers' Compensation Board*

Under New York State's Second Injury Fund Reimbursement Program, New York reimburses employers and, in some cases, assumes responsibility for payments attributable to preexisting conditions.  According to Defendant's expert, William C. Brege, two-thirds of the twenty-six claims that he reviewed, which Plaintiff did not submit to the Workers' Compensation Board, would have been eligible for this Second Injury Fund relief because of preexisting

conditions.  *See* Defendant's Memorandum of Law at 12.  Through its expert, Defendant asserts

that Plaintiff's failure to file these claims cost the Trust $4,179,449.70.  *See id.* at 14.

>   The Second Injury Fund of the Workers' Compensation Law provides that

>>   "[i]f an employee . . . who has other permanent physical
>>   impairment incurs a subsequent disability by accident arising out of
>>   and in the course of his employment . . . resulting in a permanent
>>   disability caused by both conditions that is materially and
>>   substantially greater than that which would have resulted from the
>>   subsequent injury" . . . then the Special Disability Fund must
>>   reimburse the employer for part of the compensation payable to the
>>   employee for his aggregate disability.

*Saletta v. Allegheny Ludlum Steel Corp.*, 62 A.D.2d 360, 362 (3d Dep't 1978) (quoting [N.Y.

Workers' Comp. Law § 15(8)(d)]).

>   The parties agree that, in order to qualify for this Second Injury Fund relief, the insurance

carrier must establish (1) that the claimant had a pre-existing permanent impairment; (2) that said

pre-existing impairment was, in fact, a hindrance to the claimant's employment; (3) that there

was an occurrence of a subsequent permanent disability; and (4) that the total disability was

made materially and substantially greater than it would have been from the claimant's subsequent

physical impairment alone.  *See id.* at 361-62.  Moreover, it is insufficient that the sum of the

injuries are materially greater than the subsequent injury alone; the prior handicap must increase

the employer's compensation liability above that which it would have incurred because of the

subsequent injury alone.  *See id.* at 362.

>   To submit a timely claim for Second Injury Fund relief, the employer or its delegate must

file the C-250 form with the Second Injury Fund no later than 104 weeks after the date of

disability or death.  *See De Marco v. City of Niagara Falls*, 31 A.D.2d 667, 668 (3d Dep't 1968)

(citing Workmen's Compensation Law, § 15, subd. 8, par. [f]).  Failure to submit the form within the required time frame results in a denial of the claim.  Likewise, a party's failure to perfect the claim once it has submitted the C-250 form also results in the denial of the claim.  *See, e.g., Krotman v. Berke, Berke & Grill*, 53 A.D.3d 812, 813 (3d Dep't 2008) (citations omitted).

In two instances Plaintiff submitted untimely C-250 forms to the Workers' Compensation Board; and Defendant was, therefore, precluded from receiving compensation from the Second Injury Fund.  *See* Affidavit of William C. Brege sworn to September 25, 2008 ("Brege Aff."), at ¶ 2(L), (K).  The fact that Plaintiff submitted these forms indicates that it believed that these injuries qualified for Second Injury Fund relief, and Plaintiff has failed to explain why its failure to submit these forms on time was not a breach of its obligations under the Contract.  Despite this omission, however, questions of fact exist that preclude summary judgment.  There is insufficient information to determine if the beneficiaries in these two instances arguably met all four requirements for Second Injury Fund relief or if Plaintiff's actions were objectively reasonable.

The remainder of the Second Injury Fund claims concern instances in which Plaintiff either did not submit C-250 forms or instances in which Plaintiff submitted the initial C-250 form yet did not thereafter perfect its application for Second Injury Fund relief.  Under the Contract, the decision whether to submit the C-250 form for Second Injury Fund relief is within Plaintiff's discretion.  Thus, the question is whether Plaintiff exercised reasonable care in the exercise of that discretion, which is a question of fact for the jury.  *See King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) (citations omitted).

-10-

### *2. The second basis on which Defendant claims breach of contract: Plaintiff took commissions in excess of industry standards*

Defendant contends that Plaintiff breached its obligations under the Contract by taking

commissions in excess of industry standards for placement of reinsurance coverage.  *See*

Defendant's Memorandum of Law at 19.  The Trust Agreement provides that "[t]he

Administrator will secure at least two (2) competitive bids each year for these [excess insurance]

coverages. . . . The Administrator may earn an industry standard commission for placing this

coverage."  *See* Atwater Decl. at Exhibit "F," at § 6.2.  The Contract, however, merely states that

"[t]he Administrator may receive brokerage commissions for placing these coverages," without

providing any guiding language as to the method for calculating that commission.  *See id.* at

Exhibit "G," at § 3.2.

Although separate writings involving different parties, serving different purposes, and not

referring to each other do not form a unitary contract, *see Nat'l Union Fire Ins. Co. of Pittsburgh,*

*Pa. v. Clairmont*, 231 A.D.2d 239, 241 (1st Dep't 1997), "it is a well-established rule of contract

law that all contemporaneous instruments between the same parties relating to the same subject

matter are to be read together and interpreted as forming part of one and the same transaction[,]"

*Evans Prods. Co. v. Decker*, 52 A.D.2d 991, 992 (3d Dep't 1976) (citing *Nau v. Vulcan Rail &*

*Constr. Co.*, 286 N.Y. 188 [(1941)]) (other citations omitted).

In the present matter, the parties executed the Trust Agreement and the Contract on

November 13, 1995.  *See* Atwater Decl. at Exhibits "F" and "G."  Dwight Healey, Defendant's

Representative, and a representative of Key Bank of New York, which served as the initial

Financial Institution of the Trust, signed the Trust Agreement.  *See id.* at Exhibit "F."  Dwight

Healey, as the initial Trustee, and a representative of Plaintiff signed the Contract.  *See id.* at

Exhibit "G," at 15.  Dennis Ryan, Plaintiff's President, drafted both documents.  *See* Defendant's

Statement of Material Facts at ¶ 16; Plaintiff's Counterstatement of Material Facts at ¶ 16.

Although Plaintiff was not a signatory to the Trust Agreement, the Contract provides that "[t]he

Administrator shall perform other reasonable duties and responsibilities delegated to it by the

Board of Trustees and agreed to in writing by the Administrator in the Trust Agreement or other

separate written agreements."  *See* Atwater Decl. at Exhibit "G," at § 3.20.  In addition, the

Contract is annexed to the Trust Agreement, which is further proof that the parties intended to

treat the two agreements as one document.

      In light of all the facts, it is clear that the parties intended that the Trust Agreement would

bind Plaintiff, as the administrator.  Plaintiff drafted both agreements and set up the Trust for

Defendant.  *See* Deposition Transcript of Dennis Ryan dated January 18, 2008 ("Ryan Tr."), at

81-83.  Although the fact that Plaintiff did not sign the Trust Agreement weighs against finding a

unitary contract in these two writings, it is not dispositive.  *See Clairmont*, 231 A.D.2d at 242

(citations omitted).

      Further, Mr. Ryan, Plaintiff's President, admitted that he believed that Plaintiff had the

right to be the administrator of the Trust, in perpetuity, absent some egregious conduct, because

of the "intellectual property" rights he owned over the Trust and because of the "legwork" his

company put forth in getting the Trust operational and drafting the documents.  *See* Ryan Tr. at

81-82.  Plaintiff admits that it intended to serve as administrator in perpetuity and that it drafted

the agreements, yet it now asserts that it is not bound by the limitations on the administrator

found in the Trust Agreement.  Such an interpretation is clearly contrary to the reasonable

expectations of the parties, and the Court must construe any ambiguity in this regard against

Plaintiff as the documents' drafter.  *See Jacobson v. Sassower*, 66 N.Y.2d 991, 993 (1985)

(citation omitted).

Finally, integration of the Trust Agreement provisions is not in contravention of the parol

evidence rule because

> [w]here several instruments constitute part of the same transaction,
> they must be interpreted together.  In the absence of anything to
> indicate a contrary intention, instruments executed at the same
> time, by the same parties, for the same purpose, and in the course
> of the same transaction will be read and interpreted together, it
> being said that they are, in the eye of the law, one instrument.

*BWA Corp. v. Alltrans Express U.S.A., Inc.*, 112 A.D.2d 850, 852 (1st Dep't 1985) (citation

omitted).

In reading the Trust Agreement and Contract together, it is clear that the parties' intention

was to limit Plaintiff's commissions for placement of reinsurance coverage to the industry

standard rate.  The parties have both admitted that the industry standard rate for such

commissions is fifteen percent (15%).  *See* Deposition Transcript of Michael A. Smith dated

February 22, 2008 ("Smith Tr."), at 45-46;[7] Ryan Tr. at 227-28.  Further, both Defendant's and

Plaintiff's witnesses stated that Plaintiff was earning in excess of twenty percent (20%)

commission for this service.  *See* Deposition Transcript of Jeffrey J. Bogacki dated January 25,

2008 ("Bogacki Tr."), at 224-25; Smith Tr. at 46; Affidavit of Glenn Newman sworn to October

_____

[7] Plaintiff's only attempt to refute this proposition appears in its Counterstatement of
Material Facts, in which it denies this assertion.  It cites to the Bogacki Deposition to support this
denial.  *See* Plaintiff's Counterstatement of Material Facts at ¶ 52 (citing Bogacki Tr. at 224-25).
Plaintiff is stretching the statements that Mr. Bogacki made beyond their intended meaning, and
those statements do not truly support Plaintiff's assertion.

14, 2008 ("Newman Aff."), at ¶¶ 10-11; Ryan Tr. at 227-28.  Defendant's expert found that Plaintiff's receipt of commissions above the fifteen percent industry standard cost the Trust $753,173, from 1996 to 2006.[8]  *See* Newman Aff. at ¶ 14.

As the Trust Agreement and the Contract form a unitary contract, Plaintiff was not permitted to charge the Trust more than the standard industry commission of fifteen percent for this service, unless Defendant authorized such an increase.  Plaintiff does not allege and there is nothing in the record to indicate that Defendant authorized these excess charges.  Therefore, because there is no dispute about what the standard industry commission is and because Plaintiff received commissions in excess of that standard, the Court grants Defendant's motion for summary judgment as to liability for this claim.  However, because Plaintiff challenges the qualifications of Defendant's expert and the method he used to calculate the loss to the Trust, the Court finds that issues of fact exist that preclude granting summary judgment with respect to damages.

### 3. The third basis on which Defendant claims breach of contract: Plaintiff impermissibly charged the Trust for subcontractor services

Defendant contends that Plaintiff materially breached its obligations under the Contract by impermissibly charging the Trust millions of dollars in fees for outside subcontractor services. Defendant contends that the Contract only allowed Plaintiff to bill the Trust additional money in

---

[8] This is one of several instances where it appears that the six-year statute of limitations bars the claims for commissions that Plaintiff charged the Trust prior to December 30, 1999 – six years prior to the date on which Plaintiff filed this action.  Plaintiff asserted a statute-of-limitations defense in its amended answer, yet it did not raise this issue in opposition to Defendant's motion.  *See* Dkt. No. 53 at ¶ 27.

certain limited circumstances, which were not present in the instances alleged.  *See* Defendant's Memorandum of Law at 16.

Section 4.4 of the Contract provides that "the Administrator's fee shall be a component of the Manual Premium contributed by each employer and not a separate charge in addition to the contribution of each participating employer."  *See* Atwater Decl. at Exhibit "G," at § 4.4.  It further provides that "[t]he Administrator shall be responsible for the payment of all fees to its subcontractors, unless otherwise specified in this [Contract]."  *See id.*  Defendant contends that neither the Contract nor the Trust Agreement identifies any other circumstances in which the Trust is responsible for payment of subcontractors; and, therefore, Plaintiff impermissibly charged Defendant for contractor services.  *See* Defendant's Memorandum of Law at 17.

In the section discussing Plaintiff's duties, the Contract states that "[t]he Administrator will also distribute payments from the account to service vendors, excess insurers and bonding companies engaged in connection with the operation of the Trust."  *See id.* at Exhibit "G," at § 3.8.  Plaintiff's assertion that this provision justifies all of its charges to the Trust is unavailing. The excess insurance and surety bond provisions refer to mandatory payments that are necessary to be qualified to operate a self-insured trust.  *See* Defendant's Memorandum of Law at 18.  It would create an absurd result if the Court read the "service vendors" portion of that section of the Contract as justification for the Administrator to collect its inflated 14% commission for administering the Trust,[9] but not requiring it to provide any administrative services because it

_____

[9] Under the Contract and the Trust Agreement, Plaintiff, as Administrator of the Trust, was entitled to receive a commission "equal to fourteen percent (14%) of the projected manual premium for each Participating Employer."  *See* Atwater Decl. at Exhibit "G," at § 4.4.  The "manual premium" was defined as "payroll multiplied by the New York State workers' insurance

(continued...)

-15-

could now hire subcontractors, at the Trust's expense, to provide any or all of those services. The parties clearly did not intend such a result. Further, even if the Court were to consider these provisions ambiguous when read together, because Plaintiff drafted the Contract, the Court would have to construe this ambiguity against Plaintiff. *See McNally Wellman Co. v. N.Y. State Elec. & Gas Corp.*, 63 F.3d 1188, 1199 (2d Cir. 1995) (citing *Guardian Life Ins. Co. v. Schaefer*, 70 N.Y.2d 888, 524 N.Y.S.2d 377, 378, 519 N.E.2d 288 (1987)).

The Contract also obligates Plaintiff to "provide risk management, loss control and claim administration services to the Participating Employers and that [Plaintiff] may subcontract some or all of these duties to qualified third parties." *See* Atwater Decl. at Exhibit "G," at § 3.3. The Trust requires Plaintiff to provide claims adjudication services and allows Plaintiff to subcontract all or a portion of these services to third parties. *See id.* at Exhibit "F," at § VI.

Although these provisions allow Plaintiff to subcontract these services, they do not allow Plaintiff to charge the Trust when it does so. As discussed above, such an interpretation would create an absurd result by allowing Plaintiff to collect its administrator's fee without actually administering the Trust. Furthermore, in sections 3.2 (payment of excess insurance and a surety bond), 3.16 (annual audit by a CPA and actuary), and 3.17 (annual payroll audit), the Contract allows for the subcontracting of several services. Significantly, in these sections, the Contract expressly states that the Trust shall bear the cost of these subcontractor services. These provisions provide further proof that the parties did not intend for Plaintiff to be able to charge

---

[9](...continued)
fund rate after loss cost adjustment." *See id.* Although the premium that was actually charged to the Trust's members was discounted from this initial calculation, Plaintiff still received its commission based on the higher rate defined above. *See* Defendant's Statement of Material Facts at ¶ 28; Plaintiff's Counterstatement of Facts at ¶ 28.

the Trust for all of the subcontractors it hired to help administer the Trust.

Accordingly, the Court grants Defendant's motion for summary judgment as to liability for this claim with respect to all subcontractor charges that relate to claims administration.  The Court, however, denies summary judgment as to damages at this time because there remain questions of fact regarding the amount of damages to which Defendant is entitled.[10]

### 4. The fourth basis on which Defendant claims breach of contract: Plaintiff failed to follow industry-accepted Workers' Compensation Board claims-handling practices

Defendant asserts that Plaintiff breached the Contract by failing to follow industry-accepted Workers' Compensation Board claims-handling practices, which resulted in excess charges and fines to the Trust.  Plaintiff asserts that, because its actions under the Contract involved the use of its discretion, Defendant must prove that Plaintiff acted in an irrational or arbitrary manner, which it has failed to do.

The ordinary rules of contract construction govern contracts for the administration of an

---

[10] In addition to its statute-of-limitations affirmative defense, Plaintiff also asserts that Defendant waived any alleged opportunity to terminate the Contract for "cause," pursuant to the election-of-remedies doctrine, because Defendant elected to continue under the Contract after having received notice of the alleged "cause" for termination.  Contrary to Plaintiff's assertion, just because Defendant may have elected to continue the Contract after Plaintiff's alleged breaches does not mean that Defendant cannot sue for damages on those breaches; Defendant is merely bound to actual damages for those claims and cannot use past breaches as justification for its termination of the Contract.  *See  Cities Serv. Helex, Inc. v. United States*, 543 F.2d 1306, 1313 (Ct. Cl. 1976) (citations omitted); *see also Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1011 (S.D.N.Y. 1995) (holding that, "[w]hen a party materially breaches a contract, the non-breaching party must choose between two remedies – he can elect to terminate the contract and recover liquidated damages or he can continue the contract and recover damages solely for the breach" (citing *ARP Films, Inc. v. Marvel Entertainment Group, Inc.*, 952 F.2d 643, 649 (2d Cir. 1991))).  Since the Court is not granting summary judgment with respect to damages on Defendant's breach-of-contract counterclaim, any discussion of election of remedies would be premature at this time.

insurance fund.  *See Comm'rs of State Ins. Fund v. Photocircuits Corp.*, 20 A.D.3d 173, 180-81

(1st Dep't 2005) (citing *Matter of Covert*, 97 N.Y.2d 68, 76 (2001)) (other citation omitted).  "As

in every contract for the performance of services, the party obligated to perform a service is

required to do so in an 'objectively reasonable manner under the circumstances[.]'"  *Id.* at 181

(quoting *Pierson v. Willets Point Contr. Corp.*, 899 F. Supp. 1033, 1049 (1995)).

     Under the Contract, Plaintiff was obligated to, among other things, (1) make a diligent

effort to file, on a timely basis, all forms and applications necessary to maintain Defendant's self-

insurance privileges; (2) represent the Trust in obtaining two competitive bids, each year, for

obtaining excess insurance; (3) provide risk management, loss control, and claims administration

services to Defendant; (4) review each claim for compensation and determine that employee's

eligibility under the Trust and applicable laws and determine the length of that eligibility; (5)

establish a claims-payment account and use this account for the payment of claims and the

Trust's administrative expenses; (6) complete and file all claims forms required by law for the

proper administration of claims filed against the Trust; (7) file all appropriate claims with the

excess insurance carrier and comply with the excess insurance carrier's rules in doing so; and (8)

make a diligent effort to comply with all rules and regulations of the Workers' Compensation

Law.  *See* Atwater Decl. at Exhibit "G," at Art. III.

     In *Comm'rs of State Ins. Fund*, the defendants brought counterclaims alleging that the

plaintiff breached the express terms of the contract by failing to investigate and defend workers'

compensation claims properly.  *See Comm'rs of State Ins. Fund*, 20 A.D.3d at 174.  Several of

the alleged breaches, which caused the defendants' premiums to increase greatly, were alleged

failures on the plaintiff's part to file claims with the Second Injury Fund.  *See id.* at 178.  The

Appellate Division, reversing the supreme court's grant of summary judgment to the plaintiff, noted that these claims were for more than mere negligent performance of the plaintiff's duties under the contract and stated that the defendant "is asserting what amounts to a conscious disregard by the Fund of its basic contractual obligations to perform reasonably." *Id.* at 182. Further, the court held that the proper inquiry, for the failure to apply for Second Injury Fund relief claims, is not whether the Workers' Compensation Board would have granted the relief, but whether it was objectively reasonable for the plaintiff not to submit the required forms to request such relief. *See id.* at 181-82.

> If the Fund does not properly investigate a claim or fails to invoke the statutory protections given to employers, the Board cannot make fully informed decisions and sort out the real claims from the inflated and false ones. It is uncontested that the Fund paid benefits to a known impostor, and that it failed to apply for benefits under Workers' Compensation Law § 15(8), appear at hearings and timely file appeals. The facts here are extreme[.] . . . However, in this case there is clearly a question of fact as to whether the Fund met its basic obligation to perform its duties to [the defendant] under the policy in a reasonable manner.

*Id.* at 183.

The claims that Defendant asserts in the present matter are nearly identical to those submitted in *Comm'rs of State Ins. Fund*. Specifically, Defendant contends that (1) Plaintiff failed to refuse reimbursements when claimants missed filing deadlines for indemnity payments costing the Trust $85,927.63; (2) Plaintiff failed to recalculate overpayments in ninety-one cases reviewed, costing the Trust $125,983.32; (3) Plaintiff failed to assess statutorily denied monetary penalties for a number of violations, in forty-three claims, costing the Trust $31,580.80; and (4), in 114 cases, Plaintiff's adjustors overpaid claimants a total of $22,647.90 because they did not

count lost time correctly, as the Workers' Compensation Board's formula mandated.  *See* Defendant's Memorandum of Law at 15 (citing Affidavit of Cathleen M. McKeown sworn to October 13, 2008 ("McKeown Aff."), at ¶¶ 20-29).  Other alleged breaches include Plaintiff's failure to pay attorney fee liens from the injured employee's payments, failure to request reimbursement of concurrent earnings, failure to pursue a ruling of fraud, failure to recoup third-party action liens, and failure to recoup overpayments after settlements had been reached.  *See id.* (citing McKeown Aff. at ¶¶ 20-25).

It is clear that issues of fact exist as to whether Plaintiff exercised its duties in an objectively reasonable manner with regard to the above-listed claims.  As such, the Court denies Defendant's motion for summary judgment with respect to these claims.


**D.      Motion to amend the third-party complaint**

Defendant seeks to amend its third-party complaint to add AVI Risk Services, LLC as a counterclaim defendant because it claims that Plaintiff, AV Consultants, Inc., and AV West Coast, Inc., merged into AVI Risk Services, LLC, and that this new corporation inherited Plaintiff's contractual and tort liabilities.  *See* Defendant's Memorandum of Law at 20.  The only reason that Plaintiff provides for opposing this motion is its contention that, "[f]ollowing the dissolution of CRS, AV International, LLC, not AVI Risk Services, LLC, retained the assets and liabilities pertaining to this lawsuit."  *See* Ryan Aff. at ¶ 21.

Moreover, although Plaintiff has filed a Rule 7.1 Disclosure Statement, in which it contends that it has dissolved and that AVI Risk Services, LLC assumed its assets and liabilities, *see* Dkt. No. 64, that document further states that "any recovery or liability involved with the

subject litigation has been assumed by AV International, Inc. a Pennsylvania Corporation." *See id.*

The Articles/Certificate of Merger supports Defendant's position. *See* Atwater Decl. at Exhibit "P." It provides that AV Consultants, Inc., AV West Coast, Inc., and AVI Risk Services, LLC are merging and that AVI Risk Services, LLC is the surviving entity. *See id.* It also provides that Dennis Ryan is the President and/or Secretary of each of the entities involved in the merger. *See id.*

New York courts have carved out four exceptions to the general rule that a corporation that acquires the assets of another is not liable for the selling corporation's tort and contract obligations. *See Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239, 244 (1983). Successor liability will be imposed on the surviving entity if "(1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." *Id.* at 245; *see also Fitzgerald v. Fahnestock & Co., Inc.*, 286 A.D.2d 573, 575 (1st Dep't 2001) (holding that the *de facto* merger doctrine is applicable to breach-of-contract actions). "The second and third items are based on the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased." *Grant-Howard Assocs. v. Gen. Housewares Corp.*, 63 N.Y.2d 291, 296 (1984).

Defendant argues that this merger satisfies the requirements for the second exception listed above because it satisfies the "*de facto* merger" requirements. In the absence of an actual merger of two or more entities, a court may deem a transaction structured as a purchase-of-assets

to fall within the merger exception, as a *de facto* merger, if the following factors are present:

> (1) continuity of ownership; (2) cessation of ordinary business operations and the dissolution of the selling corporation as soon as possible after the transaction; (3) the buyer's assumption of the liabilities ordinarily necessary for the uninterrupted continuation of the seller's business; and (4) continuity of management, personnel, physical location, assets and general business operation[.]

*In re New York City Asbestos Litig.*, 15 A.D.3d 254, 256 (1st Dep't 2005) (citation omitted). Although it appears that Defendant has established the necessary elements of a *de facto* merger, it is unclear why it has done so because the Articles/Certificate of Merger filed with the Pennsylvania Department of State demonstrate that there was an actual merger. *See* Atwater Decl. at Exhibit "P."

Accordingly, although there was a merger of these three entities, and AVI Risk Services, LLC, is liable for some, if not all, of Plaintiff's liabilities, the Rule 7.1 disclosure makes it unclear who the appropriate party to this litigation is. Therefore, the Court directs the parties to file supplemental documentation addressing this issue.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** as to liability but is **DENIED** as to damages with respect to that part of its breach-of-contract counterclaim based on its claim that Plaintiff took commissions in excess of the industry standard; and the Court further

-22-

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** as to liability but is **DENIED** as to damages with respect to that part of its breach-of-contract counterclaim based on its claim that Plaintiff impermissibly charged the Trust for subcontractor services and for fees related to Plaintiff's failures to administer the Trust properly; and the Court further

**ORDERS** that Defendant's motion for summary judgment as to the remainder of its breach-of-contract counterclaim is **DENIED**; and the Court further

**ORDERS** that, within ten days of the date of this Memorandum-Decision and Order, the parties shall file letter briefs, not to exceed five pages, and any other supporting documentation, explaining their positions with respect to Defendant's motion to amend its third-party complaint. The Court **RESERVES** decision regarding Defendant's motion to amend its third-party complaint until the Court has had an opportunity to review the parties' submissions.

**IT IS SO ORDERED.**

Dated: July 9, 2010
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge